IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC. and | § | |
| SCIENTIFIC ATLANTA, INC., ARRIS | § | |
| GROUP, INC., and THOMSON, INC. | § | |
| | § | |
| Plaintiffs | § | C. A. No. 07-671 (SLR) |
| v. | § | Jury Trial Demanded |
| | § | |
| GPNE CORP. | § | **PUBLIC VERSION** |
| Defendant. | § | |

## GPNE'S BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER

Richard K. Herrmann (I.D. No. 405)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800 - Telephone
rherrmann@morrisjames.com

*OF COUNSEL:*
Edward W. Goldstein
egoldstein@gfpiplaw.com
Corby R. Vowell
cvowell@gfpiplaw.com
**GOLDSTEIN, FAUCETT & PREBEG, LLP**
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone

Originally dated: January 18, 2008
Public version filed: January 24, 2008

*ATTORNEYS FOR GPNE CORP.*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 2

III     ARGUMENT ...................................................................................................... 4

        A.  The Legal Standard ................................................................................... 4

        B.  This Action Could Have Been Filed in the Eastern District of Texas ......................... 8

        C.  Given the Similar Issues in the Pending Texas GPRS Litigation,
            The Interests of Justice Favor Transfer ........................................................ 8

        D.  The Balance of Convenience Favors Transfer ........................................... 10

IV.     CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Affymetrix, Inc. v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998) ........................................................................ 10

*Chrysler Credit Corp. v. Country Chrysler*,
  928 F.2d 1509 .......................................................................................................... 5

*Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc.*,
  83 F. Supp. 2d 689 (E.D. Va. 2000) ........................................................................ 5

*ConnectTel LLC v. CISCO Systems, Inc.*,
  No. 2:04-CV-396, 2005 WL 366966 (E.D. Tex., Feb. 16, 2005) ............................ 12

*Corixa Corp. v. IDEC Pharm. Corp.*,
  2002 U.S. Dist. LEXIS 2980 (D. Del. Feb. 25, 2002) ...................................... 6, 8, 10

*E.E.O.C. v. University of Pennsylvania*,
  850 F.2d 969 (3rd. Cir. 1988) ........................................................................ 7, 10, 11

*Genden v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
  621 F. Supp. 780 (N.D. Ill. 1985) .......................................................................... 13

*Holley Performance Products Inc. v. Barry Grant Inc.*,
  74 U.S.P.Q. 2d 1357 (N.D. Ill. 2004) .................................................................... 6, 7

*Houck v. Trans World Airlines*,
  947 F. Supp. 373 (N.D. Ill. 1996) .......................................................................... 12

*Impra, Inc. v. Quinton Instruments Co.*,
  17 U.S.P.Q. 2d 1890 (D. Ariz. 1990) ...................................................................... 5

*In re Ralston Purina Co.*,
  726 F.2d 1002 (4th Cir. 1986) ................................................................................ 12

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3rd Cir. 1995) .................................................................................... 10

*LG Elecs. Inc. v. Advance Creative Computer Corp.*,
  131 F. Supp. 2d 804 (E.D. Va. 2001) ...................................................................... 6

*Mymail, Ltd. v. Am. Online, Inc.*,
  223 F.R.D. 455 (E.D. Tex. 2004), ............................................................................ 9

*One Beacon Insurance Co. v. JNO Storage Trailer Corp.*,
  312 F. Supp. 2d 824 (E.D. Va. 2004) ...................................................................... 12

*Piper Aircraft Co. v. Reyno*,
  434 U.S. 235 (1981) .................................................................................................. 5

*Prudential Ins. Co. of America v. Rodano*,
  493 F. Supp. 954 (E.D. Pa. 1980) ............................................................................ 5

*Regents of Univ. of Cal. V. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997) ................................................................................ 7

*Reiffin v. Microsoft Corp.*,
　104 F. Supp. 2d 48 (D.D.C. 2000)..............................................................................5

*Reyno v. Piper Aircraft Co.*,
　630 F.2d 149 (3rd Cir. 1980).....................................................................................10

*Samsung Elecs. Co. v. Rambus Inc.*,
　386 F. Supp. 2d 708 (E.D. Va. 2005) ........................................................................9

*Sony Elecs., Inc. v. Orion IP, LLC*,
　2006 U.S. Dist. LEXIS 9834 (D. Del. Mar. 14, 2006) ..............................................6

*Stewart Org. v. Ricoh Corp.*,
　487 U.S. 22 (1988) .....................................................................................................5

*Supco Auto. Parts v. Triangle Auto Spring Co.*,
　538 F. Supp. 1187 (E.D. Pa. 1982)............................................................................5

*Van Dusen v. Barrack*,
　376 U.S. 612 (1964) ...................................................................................................5

*Zoetics, Inc. v. Yahoo!, Inc.*,
　2006 U.S. Dist. LEXIS 46910 (D. Del. July 6, 2006) ..............................................10

## Other Authorities

28 U.S.C. § 1404(a) ..................................................................................................1, 4

28 U.S.C. §§ 1391....................................................................................................... 8

35 U.S.C. §§ 1 *et seq.*................................................................................................. 8

Declaratory Judgment Act §§1331 and 1338(a) .......................................................... 8

Defendant GPNE Corporation ("GPNE") moves the Court to Transfer this case pursuant to 28 U.S.C. § 1404(a) to the Eastern District of Texas, Marshall Division where GPNE is currently litigating U.S. Pat. No. 6,282,406, one of the patents-in-suit to this declaratory action, against Samsung Telecommunications America, L.P ("Samsung") and previously asserted the same patent against DOCSIS compliant modems.

## I.    INTRODUCTION

This case concerns the infringement and validity of U.S. Pat. Nos. 6,282,406 ("the '2,406 patent"), 7,200,406 ("the '0,406 patent"), and 7,209,748 ("the '748 patent") (collectively referred to as the "patents-in-suit").  GPNE filed an infringement action concerning the same '2,406 patent against Samsung in the Eastern District of Texas on January 31, 2007.[1]  In the interest of judicial economy and for the convenience of the parties and witnesses, GPNE hereby moves for a change of venue to that district.

The action against Samsung has been actively litigated for almost a year.  Judge Davis has been introduced to the patents and the invention embodied therein.  GPNE and Samsung have exchanged claim terms to be construed by the court.  GPNE has filed its infringement contentions and Samsung has filed its invalidity contentions.  GPNE and Samsung have conducted fact discovery and inventor depositions are currently scheduled in January and March.

Judge Davis is familiar with the '2,406 patent from the action against Samsung and familiar with the DOCSIS technology from the previous DOCSIS litigation against Plaintiffs' customers which has been settled and dismissed.[2] ("the Texas DOCSIS litigation")  GPNE filed infringement contentions comparing the claims 1, 2, 4, 7, 9, 12, and 14 of the '2,406 patent to

---

[1] *GPNE Corp. v. Samsung Telecommunications America, L.P., et al.*, C.A. 6:07-cv-59
[2] *GPNE Corp. v. Time Warner Cable, Inc., et al.*, 6:07-cv-60

DOCSIS compliant cable modems and produced documents related to the '2,406 patent file history and conception.

Furthermore, none of the parties have any connection with Delaware other than GPNE, Arris Group, Inc. ("Arris"), and Thomson, Inc. ("Thomson") being incorporated there. GPNE is not aware of any documents or witnesses located in Delaware. Rather, the vast majority of GPNE's documents related to the litigation are located in the offices of its counsel, in Houston, Texas. Moreover, Texas is much closer to Hawaii than Delaware. Texas is also centrally located in relation to Plaintiffs' principal places of business in Georgia, California, and Indiana. Non-stop flights between Hawaii and Delaware are not currently offered by any airline, but both American Airlines and Continental Airlines offer non-stop flights from Hawaii to Houston and Dallas, respectfully.

## II.     STATEMENT OF FACTS

On January 31, 2007, GPNE filed two patent infringement cases in the Eastern District of Texas. GPNE filed a patent infringement action against Time Warner Inc. ("Time Warner"), Comcast Cable Communications LLC ("Comcast"), and Charter Communications, Inc. ("Charter") (collectively "the Texas DOCSIS Defendants"), alleging that the Texas DOCSIS Defendants' use of DOCSIS certified modems infringed the '2,406 patent in a case captioned *GPNE Corp. v. Time Warner Inc. et al.* No. 6:07-cv-60. (Amended Complaint attached as Exhibit A.) GPNE also filed a patent infringement action against Samsung, LG Electronics Mobilecomm U.S.A., Inc., and HTC America, Inc., alleging that mobile-phones operating under the GPRS standard infringe the '2,406 and '716 patents in a case captioned *GPNE Corp. v. Samsung Telecommunications America L.P., et al.* No. 6:07-cv-59 ("the Texas GPRS litigation") (Original Complaint attached as Exhibit B.)

On June 13, 2007, under the guise of Federal Rule of Evidence 408, GPNE met to discuss settlement with the Texas DOCSIS Defendants. (Ex. C, Declaration of Ernest Bodner in Support of Defendant's Motion For Transfer ¶ 6) ("Bodner Decl.") ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Paragraphs 17 through 19 of Plaintiffs' complaint address the presence of an actual controversy and specifically allege that GPNE informed the Plaintiffs of their infringement. However, the only communication GPNE has had with Plaintiffs was during a settlement meeting which was covered by Rule 408. (*Id.* ¶ 6.)

After the settlement meeting, GPNE continued with the Texas DOCSIS litigation and submitted infringement contentions for the '2,406 patent and DOCSIS compliant cable modems. (Plaintiffs' Amended Complaint For Declaratory Judgment ¶ 14) ("Am. Compl.".) On November 5, 2007 a Joint Stipulation to Dismiss was filed and subsequently entered by the court. (Bodner Decl. ¶ 6.)

In the Texas GPRS litigation the parties have been litigating for nearly a year. (*See id.* ¶ 3.) The parties have agreed to a scheduling order and protective order. (*Id.* ¶ 4.) They have submitted their terms and claim elements for construction. (*Id.*) Samsung has submitted their invalidity contentions. (*Id.*) The parties have a *Markman* hearing scheduled for August 7, 2008 and trial scheduled for March 9, 2009. (*Id.*)

Plaintiffs will most likely argue that the '0,406 and '748 patents have not been asserted in the Texas GPRS litigation. However, both the '0,406 and '748 patents are continuations of the '2,406 patent, already asserted in the Texas GPRS litigation. Accordingly, Plaintiffs invalidity arguments will be similar if not identical to those made in the Texas GPRS litigation. Plaintiffs

will most likely argue that the GPRS standard at issue in the Texas GPRS litigation is separate and distinct from the DOCSIS standard that Plaintiffs' modems comply with. However, both standards are based on data transmission networks and share many similarities. Thus, the interests of justice will be served if this action is transferred to the Eastern District of Texas.

Furthermore, GPNE does not have any connection to Delaware, other than the fact that they were incorporated there and were granted a motion to transfer a declaratory judgment action filed in the District of Delaware by Time Warner Cable to the Eastern District of Texas. (Bodner Decl. ¶¶ 2, 8; Am. Compl. ¶ 5; Ex. D, *Time Warner Cable, Inc. v. GPNE Corp.*, 1:07-cv-067, Memorandum Opinion.) Also, GPNE's documents related to this litigation are located in the offices of its counsel, in Houston Texas. (Bodner Decl. ¶ 7.) Texas is also centrally located in relation to Plaintiffs' principal places of business in Georgia, California, and Indiana. Non-stop flights between Hawaii and Delaware are not currently offered by any airline, but both American Airlines and Continental Airlines offer non-stop flights from Hawaii to Houston and Dallas, respectfully. (*See* Ex. E)

For the reasons delineated below, this Court should transfer this action to the Judge Leonard Davis in the Eastern District of Texas, pursuant to 28 U.S.C. § 1404(a).

## III.    ARGUMENT

### A. The Legal Standard

Section 1404(a) of 28 U.S.C. provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Congress enacted 28 U.S.C. § 1404(a) as a federal housekeeping measure allowing easy change of venue within a

unified federal system." *Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1515 (10th Cir. 1991) (internal quotation omitted). The purpose of section 1404(a) is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). As the Supreme Court explained in *Van Dusen*, "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice," regardless of where the action was originally brought. *Id.* at 616.

While it revised and codified the common law doctrine of forum *non conveniens*, section 1404(a) is broader and grants district courts more discretion to transfer cases. *Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000) (citing *Piper Aircraft Co. v. Reyno*, 434 U.S. 235, 253 (1981)). A district court has discretion to transfer based upon "individualized case by case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988).

It is well-established that a related case pending in a proposed transferee district is a "powerful reason to grant a motion for a change of venue." *Supco Auto. Parts v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1192 (E.D. Pa. 1982) (citing *Prudential Ins. Co. of America v. Rodano*, 493 F. Supp. 954, 955 (E.D. Pa. 1980) (transfer is appropriate where a similar case is pending in another jurisdiction).) "As a general rule, cases should be transferred to districts where related actions are pending." *Impra, Inc. v. Quinton Instruments Co.*, 17 U.S.P.Q. 2d 1890, 1892 (D. Ariz. 1990). Also, the court in *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 56 (D.D.C. 2000) stated: "Piecemeal litigation in the complex and technical area of patent and

trademark law is especially undesirable. Rather, all of the parties' related patent and trademark infringement claims should be decided in the same court."

"Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances." *Sony Elecs., Inc. v. Orion IP, LLC*, 2006 U.S. Dist. LEXIS 9834, at *2 (D. Del. Mar. 14, 2006) (quoting *Corixa Corp. v. IDEC Pharm. Corp.*, 2002 U.S. Dist. LEXIS 2980, at *304 (D. Del. Feb. 25, 2002)).

In *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804 (E.D. Va. 2001), the court granted a transfer from the Eastern District of Virginia to Northern District of California stating:

> In this case the Northern District of California is already familiar with the applicable law. This case is very similar to those already in the Northern District of California. Where a party has previously litigated claims involving certain issues in one forum, as LGE has here, 'a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable. Thus this factor supports transferring the case. [citations omitted.] Undoubtedly, the Northern District of California has already invested substantial time and energy in this case; therefore, transfer would promote judicial economy.

*Id.* at 815.

In *Holley Performance Products Inc. v. Barry Grant Inc.*, 74 U.S.P.Q. 2d 1357 (N.D. Ill. 2004), the court considered the waste and risk of having the same patent considered by two different courts:

> "The court should not countenance the simultaneous litigation of essentially identical claims in two federal courts." *Applexion*, 1995 U.S. Dist. LEXIS 4957 at *13. Holley argues, without support, that the court should retain jurisdiction because it is unlikely the Georgia court has as much experience with patent law as this court. Both districts are equally capable of resolving federal patent litigation. Holley also argues transfer or declining to exercise jurisdiction will cause delay, and Holley submits evidence that the median time of case disposition in the Northern District of Illinois is 5.3 moths, while the median time in the Northern

6

District of Georgia is 8.8 months. While this court has set a discovery schedule, a review of the Georgia docket shows that both cases have made comparable progress. In the Georgia case, Holley has moved to dismiss and transfer venue, just as Grant has done here. <u>This is precisely the type of duplicative litigation that warrants transfer to ensure efficient functioning of federal courts. It will be a significant waste of judicial economies for two separate courts to adjudicate issues regarding the same patent. There is a great risk that consideration of the same patent by two separate federal courts will create inconsistent results, particularly with regard to claim construction rulings.</u>

*Id.* at 1363, emphasis added.

Additionally, the Federal Circuit in *Regents of Univ. of Cal. V. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) held: "[I]n a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues. Accordingly, the court did not abuse its discretion by transferring the case after affording determinative weight to the consideration of judicial economy."

Here, the first filed case is the Texas GPRS litigation involving the same '2,406 patent asserted in this action. Historically, the Third Circuit has applied the first-to-file rule for cases involving the same issues. *See E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3rd. Cir. 1988). In *E.E.O.C.*, the court held that "in all cases of federal concurrent jurisdiction, the court which first has possession of the *subject* must decide it." *Id.* (citations omitted) (emphasis added). Furthermore, the District of Delaware, in Time Warner Cable, Inc. v. USA Video Technology Corp., interpreted the first-to-file rule as applying to "litigation that involves the same subject matter, not necessarily the same parties." 2007 WL 3196301 (D.Del., Oct. 31, 2007) (quoting *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3rd Circuit, June 23, 2988,* ("the court which first has possession of the subject must decide it.")). The first-to-file rule "serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all

7

disputes from *common matters*." *Corixa Corp. v. IDEC Pharm. Corp.*, 2002 U.S. Dist. LEXIS 2980, at *4 (D. Del. Feb. 25, 2002) (litigating two separate trials in mirror image defeats the first-to-file rule where cases involve same patent) (emphasis added).

Since the two cases both involve the similar facts and the same patent, trying the matter in two different courts would defeat the reasoning behind the first-to-file rule. Therefore, because the Eastern District of Texas initially had jurisdiction over the subject of this matter, GPNE's choice of forum should be shown deference and this case should be transferred to the Eastern District of Texas.

### B. This Action Could Have Been Filed in the Eastern District of Texas

Plaintiffs assert jurisdiction under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* and the Declaratory Judgment Act §§1331 and 1338(a). They assert venue in this district under 28 U.S.C. §§ 1391.

By filing the Texas DOCSIS and GPRS litigations GPNE has availed itself of venue in the Eastern District of Texas. Accordingly, this action could have been filed in the Eastern District of Texas.

### C. Given The Similar Issues In The Pending Texas GPRS Litigation, The Interests Of Justice Favor Transfer

The most prevalent reason for granting GPNE's motion to transfer is judicial economy. Here, Judge Davis in the Eastern District of Texas has already been introduced to the DOCSIS standard and received infringement contentions for the '2,406 patent and DOCSIS compliant modems through the Texas DOCSIS litigation. (Bodner Decl. ¶ 5.) Also, the parties have filed their infringement contentions and invalidity contentions in the Texas GPRS litigation and Judge Davis has set the trial schedule and entered a protective order. (*Id.* at ¶ 4.) Accordingly, Judge Davis has expended judicial resources on the same and similar issues to the present action and

8

transferring this action to the Eastern District of Texas promotes judicial efficiency and consistent rulings.

Further, in *Mymail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 458 (E.D. Tex. 2004), the Eastern District of Texas stated: "The prospect of inconsistent claim construction favors resolving related patent cases in the same forum when possible. [citation omitted.] Besides being a duplicative use of scarce judicial resources, two claim constructions risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justice." Courts also consider the interest of justice to "weigh heavily" in favor of transfer when related actions are pending in the transferee forum because it results in "efficient, economical and expeditious pre-trial proceedings and discovery," and prevents "duplicative litigation and inconsistent results." *Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005). The court in *Samsung Elecs. Co.* held that "transfer and consolidation will serve the interest of judicial economy in most cases where the related actions raise similar or identical issues of fact and law." *Id.*

The "interest of justice" would be ill-served if the patent infringement allegations concerning the same patent were determined by different courts. The court in the Eastern District of Texas will become intimately familiar with the patent and the underlying technology and will be required to determine the scope and validity of the patent claims. It would be extremely wasteful, and potentially produce conflicting results for another court to consider the same or substantially similar issues to those that have been or presently are being determined by a sister court.

### D.  The Balance of Convenience Favors Transfer

Generally, courts balance well-established private and public interests to determine whether transfer is warranted. *Zoetics, Inc. v. Yahoo!, Inc.*, 2006 U.S. Dist. LEXIS 46910, at *7 (D. Del. July 6, 2006) (citing *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 159 (3rd Cir. 1980)). Private interests include the plaintiff's choice of forum, the defendant's preferred forum, whether the claim arose elsewhere, the convenience of the witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and the location of books and records, to the extent that these books and records could not be produced in a certain forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3rd Cir. 1995).  The public interests include the enforceability of the judgment, practical considerations regarding the ease, speed, or expense of the trial, the administrative difficulty due to court congestion, the local interest in deciding local controversies in the home forum, the public policies of the two fora, and the trial judge's familiarity with the applicable state law in diversity cases. *Zoetics*, 2006 U.S. Dist. LEXIS 46910, at *8.

As discussed above, GPNE filed the Texas GPRS litigation before the Plaintiffs filed this action.   Accordingly, the first-to-file rule gives deference to GPNE's choice of forum.  A plaintiff's choice of forum should be upheld unless rare or extraordinary circumstances exist that would mandate dismissal or transfer. *See E.E.O.C.*, 850 F.2d at 976.  While the District of Delaware is an appropriate jurisdiction, the mere fact that some of the parties to this action are incorporated in Delaware, "alone will not tip the 'balance of convenience' in its favor. *Corixa Corp.*, 2002 U.S. Dist. LEXIS 2980, at *12 (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 207 (D. Del. 1998)).

Furthermore, even if the Court considers this the first-filed action, Plaintiffs' decision to file a Declaratory Judgment action against GPNE is blatant forum shopping. Plaintiffs admit they were aware of the recent dismissal of the Texas DOCSIS litigation in their complaint: "GPNE has filed, and, on information and belief, recently agreed to dismiss an action alleging that each of TWC, Comcast and Charter infringe the '2,406 Patent by inter alia, using and selling DOCSIS certified cable modems." (Am. Compl. ¶14.) A plaintiff's choice of forum should be upheld unless there are rare or extraordinary circumstances that mandate dismissal or transfer. See E.E.O.C., 850 F.2d at 976. Thus, if the Court determines that this is the first-filed action, Plaintiffs' forum shopping is a proper basis for departing from the first-to-file rule. Id. Consequently, this action should be transferred to the Eastern District of Texas because Plaintiffs' choice of forum should be given no deference and the other factors of convenience weigh in favor of transfer.

Moreover, Section 1404(a) particularly speaks in terms of the "convenience of the parties and the witnesses." The location of the court is initially only relevant to those witnesses who appear in person at trial. The location for depositions will occur at mutually agreed locations that are convenient to the witnesses. Most witnesses will likely testify at trial by videotape. Except for witnesses called to testify in person, transfer makes no difference whatsoever.

The location of the parties favors transfer. GPNE has its principal place of business in Honolulu, Hawaii. (Bodner Decl. ¶ 2.) None of the Plaintiffs to this action have a principal place of business in Delaware. (See Am. Compl. ¶¶ 1-4.) Rather, Cisco is a California corporation with its principal place of business in California. (Am. Compl. ¶ 1.) Scientific is a Georgia corporation with its principal place of business in Georgia. (Am. Compl. ¶ 2.) Arris is a Delaware corporation with its principal place of business in Georgia. (Am. Compl. ¶ 3.)

Thomson is a Delaware corporation with its principal place of business in Indiana. (Am. Compl. ¶ 4.) Central to *all* parties' principal place of business is Texas. All of the Plaintiff companies are major corporations doing business nationally.

Without discovery, it is impossible to know the location of Plaintiffs' trial witnesses. However, given the nature of the Plaintiffs' business and infringing activity, Plaintiffs would be hard pressed to claim that a transfer of this action would represent a hardship. Moreover, devices that are compliant with the DOCSIS standard necessarily contain certain standard features. Thus, it is highly likely that Plaintiffs' engineers would not be needed as trial witnesses. Also, since patent validity is a matter of expert witnesses interpreting publications, Plaintiffs' employees would not be necessary witnesses concerning validity.

Indeed, it is likely that the principal witnesses will be experts, not party employees. The convenience of paid, expert witnesses is entitled to little or no weight. *See, e.g., In re Ralston Purina Co.*, 726 F.2d 1002, 1006, n. 6 (4th Cir. 1986) ("[t]he convenience of plaintiff's paid expert witnesses is of little moment."); *Houck v. Trans World Airlines*, 947 F. Supp. 373, 376, n.5 (N.D. Ill. 1996) ("[t]he location of expert witnesses is not relevant."); *One Beacon Insurance Co. v. JNO Storage Trailer Corp.*, 312 F. Supp. 2d 824, 831 (E.D. Va. 2004) ("[i]t is less inconvenient for an expert to travel in order to testify, because an expert is well compensated...."). *See also ConnectTel LLC v. CISCO Systems, Inc.*, No. 2:04-CV-396, slip. Op. at *3, 2005 WL 366966 (E.D. Tex., Feb. 16, 2005) (Hon. Leonard Davis) ("[g]iven that patent cases like this involve battles of documents and technical experts scattered across the nation, this factor is immaterial and does not favor transfer.").

Moreover, there are no known documents located in Delaware. Also, location of counsel is irrelevant as Section 1404 speaks in terms of the "convenience of the parties and witnesses.

*See Genden v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 621 F. Supp. 780, 782 (N.D. Ill. 1985) (noting that "the convenience of counsel is not a factor").  Consequently, the location of the parties and witnesses favors transfer to the Eastern District of Texas because it is a central location for all the parties.

The administrative difficulty due to court congestion also weighs in favor of transfer to the Eastern District of Texas.  Specifically, in 2006 the median time from filing to disposition in a civil case in the District of Delaware was 16.8 months, compared to 9 months in the Eastern District of Texas.  (Ex. F, G).  Consequently, the court congestion in the District of Delaware weighs in favor of transfer to the Eastern District of Texas.

The remaining factors are neutral.  Both the Eastern District of Texas and the District of Delaware are familiar with the patent laws and have adopted patent rules.  A judgment would be enforceable against the parties regardless of transfer.  The local interest in deciding local controversies is neutral because the DOCSIS certified modems are sold and used in both districts.

## IV.    CONCLUSION

It makes judicial and economic sense for a patent case to be transferred to a court that has been introduced to the patents and underlying technology, that has already scheduled a *Markman* hearing to construe the scope of the patents, and that will consider infringement and validity arguments that are likely to be the same or at least substantially overlap with those in the current action. Not only would transfer serve the interests of judicial economy, but it would also prevent the possibility of inconsistent rulings. For the reasons outlined above, this Court should transfer this action to the Eastern District of Texas.

Richard K. Herrmann (#405)
**Morris James, LLP**
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
T: (302) 888-6800
rherrmann@morrisjames.com

OF COUNSEL:
Edward W. Goldstein
egoldstein@gfpiplaw.com
Corby R. Vowell
cvowell@gfpiplaw.com
Goldstein, Faucett & Prebeg, LLP
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737   Facsimile

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GPNE CORP., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No: No. 6:07-cv-60 |
| | § | |
| TIME WARNER CABLE, INC.; | § | |
| COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; CHARTER | § | **JURY TRIAL DEMANDED** |
| COMMUNICATIONS, INC. | § | |
| | § | |
| Defendants | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, GPNE Corp. ("Plaintiff"), files this Original Complaint against Defendants, Time

Warner Cable, Inc. ("Time Warner"), Comcast Cable Communications, L.L.C. ("Comcast"), and

Charter Communications, Inc. ("Charter"), and alleges as follows:

### THE PARTIES

1.     Plaintiff is a Delaware corporation with its principal place of business at 2556 Lemon Road,

B101 Honolulu, Hawaii 96815.

2.     Time Warner, on information and belief, is a corporation organized under the laws of the

State of Delaware. Time Warner is doing business in Texas, and, on information and belief,

has a principal place of business at 290 Harbor Drive; Stamford, CT 06902. Time Warner

1

may be served with process by serving its registered agent, the CT Corporation System, 350 North St. Paul St., Dallas, TX 75201.

3.      Comcast, on information and belief, is a corporation organized under the laws of the State of Delaware. Comcast is doing business in Texas, and, on information and belief, has a principal place of business at 1500 Market Street, Philadelphia, PA 19102-2148. Comcast may be served with process by serving its registered agent, Comcast Capital Corporation at 1201 Market Street, Suite 1000, Wilmington, DE 19801.

4.      Charter, on information and belief, is a corporation organized under the laws of the State of Delaware. Charter is doing business in Texas, and, on information and belief, has a principal place of business at 12405 Powerscourt Drive, St. Louis, MO 63131. Charter may be served with process by serving its registered agent, Corporation Service Company DBA CSC-Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, TX 78701.

**JURISDICTION & VENUE**

5.      This is an action for infringement of a United States patent. Accordingly, this action arises under the patent laws of the United States of America, 35 U.S.C. § 1 et. seq. and jurisdiction is properly based on Title 35 United States Code, particularly § 271, and title 28 United States Code, particularly § 1338(a).

6.      Time Warner, upon information and belief, transacts business in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in United States Patent No. 6,282,406, the patent at issue in this lawsuit, and/or by conducting other business in this judicial district.

2

7.    Comcast, upon information and belief, transacts business in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in United States Patent No. 6,282,406, the patent at issue in this lawsuit, and/or by conducting other business in this judicial district.

8.    Charter, upon information and belief, transacts business in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in United States Patent No. 6,282,406, the patent at issue in this lawsuit, and/or by conducting other business in this judicial district.

9.    Venue is proper in this court under Title 28 United States Code § 1391(b) and 1400(b).

## PATENT INFRINGEMENT COUNT

10.    On August 28, 2001, United States Patent No. 6,282,406 ("the '406 patent") entitled "Paging Method and Apparatus" was duly and legally issued. A true and correct copy of the '406 patent is attached as Exhibit A.

11.    Pursuant to 35 U.S.C. § 282, the above-listed United States Patent is presumed valid.

12.    Plaintiff, GPNE Corp., is the owner of the '406 patent.

13.    Time Warner, on information and belief, manufactures, uses, and sells products that infringe at least Claim 1 of the '406 patent, including for example and without limitation all DOCSIS certified cable modems, as well as any other cable modems or other devices acting or capable of acting in the manner described and claimed in the '406 patent.

14.    Comcast, on information and belief, manufactures, uses, and sells products that infringe at least Claim 1 of the '406 patent, including for example and without limitation all DOCSIS

3

certified cable modems, as well as any other cable modems or other devices acting or capable of acting in the manner described and claimed in the '406 patent.

15.  Charter, on information and belief, manufactures, uses, and sells products that infringe at least Claim 1 of the '406 patent, including for example and without limitation all DOCSIS certified cable modems, as well as any other cable modems or other devices acting or capable of acting in the manner described and claimed in the '406 patent.

16.  The infringement of the '406 patent alleged above has injured the Plaintiff and thus, it is entitled to recover damages adequate to compensate for Time Warner, Comcast, and Charter's infringement, which in no event can be less than a reasonable royalty.

### DEMAND FOR JURY TRIAL

17.  Plaintiff hereby demands a jury trial on all claims and issues.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for entry of judgment:

A.    that Defendants, Time Warner, Comcast, and Charter, have infringed one or more claims of the '406 patent;

B.    that Defendants, Time Warner, Comcast, and Charter, account for and pay to Plaintiff all damages caused by the infringement of the '406 patent, which by statute can be no less than a reasonable royalty;

C.    that Plaintiff be granted pre-judgment and post-judgment interest on the damages caused to them by reason of Defendants, Time Warner, Comcast, and Charter's infringement of the '406 patent;

D.    that Plaintiff be granted its attorneys' fees in this action;

4

E.    that costs be awarded to Plaintiff;

F.    that Plaintiff be granted such other and further relief as the Court may deem just and

proper under the current circumstances.


Respectfully submitted,


Date: February 26, 2007                     /s/ Edward W. Goldstein
                                            Edward W. Goldstein
                                            Texas Bar No. 08099500
                                            egoldstein@gfpiplaw.com
                                            Christopher M. Faucett
                                            Texas Bar No. 00795198
                                            cfaucett@gfpiplaw.com
                                            Matt Prebeg
                                            Texas Bar No. 00791465
                                            mprebeg@gfpiplaw.com
                                            Corby R. Vowell
                                            Texas Bar No. 24031621
                                            cvowell@gfpiplaw.com
                                            GOLDSTEIN, FAUCETT, & PREBEG L.L.P
                                            1177 West Loop South, Suite 400
                                            Houston, TX 77027
                                            Telephone: (713) 877-1515
                                            Facsimile: (713) 877-1737

                                            T. John Ward, Jr.
                                            Texas Bar No. 00794818
                                            Law Office of T. John Ward, Jr., P.C.
                                            111 W. Tyler Street
                                            Longview, Texas 75601
                                            Telephone: (903) 757-6400
                                            Facsimile: (903) 757-2323
                                            Email: jw@jwfirm.com
                                            *ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 26, 2007.  Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein
Edward W. Goldstein

6

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



| | | |
|---|---|---|
| GPNE CORP., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No: 6:07cv 59 |
| | § | |
| SAMSUNG TELECOMMUNICATIONS | § | |
| AMERICA, L.P.; LG ELECTRONICS | § | |
| MOBILECOMM U.S.A, INC.; HTC | § | **JURY TRIAL DEMANDED** |
| AMERICA, INC. | § | |
| | § | |
| Defendants | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, GPNE, Corp. ("Plaintiff"), files this Original Complaint against Defendants,

Samsung Telecommunications America, L.P. ("Samsung"), LG Electronics MobileComm U.S.A.,

Inc. ("LG"), and HTC America, Inc., ("HTC"), and alleges as follows:

### THE PARTIES

1.    Plaintiff is a Delaware corporation with its principal place of business at 2556 Lemon Road,

B101 Honolulu, Hawaii 96815.

2.    Samsung, on information and belief, is a corporation organized under the laws of the State of

Delaware. Samsung is doing business in Texas, and, on information and belief, has a

principal place of business at 1130 E. Arapaho Road, Richardson, TX 75081. Samsung may

1

be served with process by serving its registered agent, Jeong Han Kimat 1130 Arapaho Road, Richardson, TX 75081.

3.    LG, on information and belief, is a corporation organized under the laws of the State of California. LG is doing business in Texas, and, on information and belief, has a principal place of business at 9820 Willow Creek Road, San Diego, CA 92131. LG may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201.

4.    HTC, on information and belief, is a corporation organized under the laws of the State of Texas. HTC is doing business in Texas, and, on information and belief, has a principal place of business at 5950 Corporate Drive, Houston, TX 77036-2306. HTC may be served with process by serving its registered agent, Law Office of Christina C. Hsu, 15224 Interlachen Drive, Austin, TX 78717.

## JURISDICTION & VENUE

5.    This is an action for infringement of a United States patent. Accordingly, this action arises under the patent laws of the United States of America, 35 U.S.C. § 1 et. seq. and jurisdiction is properly based on Title 35 United States Code, particularly § 271, and title 28 United States Code, particularly § 1338(a).

6.    Samsung, upon information and belief, transacts business in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in United States Patent No. 6,282,406 and United States Patent No. 7,031,716, the patents at issue in this lawsuit, and/or by conducting other business in this judicial district.

2

7.   LG, upon information and belief, transacts business in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in United States Patent No. 6,282,406 and United States Patent No. 7,031,716, the patents at issue in this lawsuit, and/or by conducting other business in this judicial district.

8.   HTC, upon information and belief, transacts business in this judicial district by manufacturing, using, selling, or offering to sell products as described and claimed in United States Patent No. 6,282,406 and United States Patent No. 7,031,716, the patents at issue in this lawsuit, and/or by conducting other business in this judicial district.

9.   Venue is proper in this court under Title 28 United States Code § 1391(b) and 1400(b).

## PATENT INFRINGEMENT COUNT I

10.  On August 28, 2001, United States Patent No. 6,282,406 ("the '406 patent") entitled "Paging Method and Apparatus" was duly and legally issued. A true and correct copy of the '406 patent is attached as Exhibit A.

11.  Pursuant to 35 U.S.C. § 282, the above-listed United States Patent is presumed valid.

12.  Plaintiff, GPNE Corp., is the owner of the '406 patent.

13.  Samsung, on information and belief, manufactures, uses, and sells products that infringe at least Claim 1 of the '406 patent, including for example and without limitation Samsung's BlackJack, Trace, t509s, t619, SGH-c207, SGH-c225, SGH-d307, SGH-d357, SGH-d407, SGH-d415, SGH-d700, SGH-d807, SGH-e105, SGH-e315, SGH-e317, SGH-e715, SGH-p207, SGH-p705, SGH-p735, SGH-p777, SGH-q105, SGH-s105, SGH-s307, SGH-v205, SGH-v206, SGH-x105, SGH-x427, SGH-x427m, SGH-x475, SGH-x495, SGH-x497, SGH-z400, SGH-zx10, and SGH-zx20 cellular telephones, as well as any other cellular telephones

3

or devices acting or capable of acting under the GPRS standard or in the manner described and claimed in the '406 patent.

14.   LG, on information and belief, manufactures, uses, and sells products that infringe at least Claim 1 of the '406 patent, including for example and without limitation LG's A7110, A7710, C1300, C1300i, C1500, C2000, CG225, CG300, CU320, CU400, CU500, F7200, F9100, F9200, G4011, G4015, G4050, L1150, L1200, L1400, and L1400i cellular telephones, as well as any other cellular telephones or devices acting or capable of acting under the GPRS standard or in the manner described and claimed in the '406 patent.

15.   HTC, on information and belief, manufactures, uses, and sells products that infringe at least Claim 1 of the '406 patent, including for example and without limitation HTC's Wallaby, Himalaya, Blue Angel, Magician, Magician Refresh, Alpine (Mont Blanc), Charmer, Prophet, Universal, Wizard (Prodigy), Hermes, TyTN, Artemis, P3300, Trinity, P3600, Muse (Melody), Herald, P4350, Foreseer DVB-H TV, Monet (Trilogy) DVB-H TV, Canary, Tanager, Voyager, Typhoon, Typhoon Feeler, Typhoon Sonata, Typhoon Amadeus, Hurricane, Tornado (Riemma, Farada, Tempo), Blizzard, Star Trek, Breeze, Excalibur, Oxygen, and Vera cellular platforms, as well as the Cingular 2125, Cingular 3125, Cingular 8125, Cingular 8525, Qtek 1010, Qtek 2020, Qtek 9090, Qtek S100, Qtek S110, Qtek 2020i, Qtek S200, Qtek 9000, Qtek 9100, Qtek 9600, Qtek 6080, Qtek 7070, Qtek 8060, Qtek 8080, Qtek 8010, Qtek 8020, Qtek 8100, Qtek 8200, Qtek 8300, Qtek 8310, Qtek 8500, Qtek 8600, Dopod 686, Dopod 696, Dopod 700, Dopod 818, Dopod 828, Dopod 696i, Dopod 818 Pro, Dopod 900, Dopod 838, Dopod P800W, Dopod D810, Dopod C800, Dopod 515, Dopod 535, Dopod 565, Dopod 575, Dopod 585, Dopod 566, Dopod 586, Dopod 586W, Dopod

577W, Dopod s300, Dopod C720W, Dopod 310, i-Mate PocketPC, i-Mate PDA2K, i-Mate

Jam,$O_2$ XDA,$O_2$ XDA, $O_2$ XDA II, $O_2$ XDA IIs, $O_2$ XDA II Mini, $O_2$ XD IIi,$O_2$ XDA

Neo,$O_2$ XDA Exec,$O_2$ XDA Mini S,$O_2$ XDA Trion,$O_2$ XDA Orbit, Orange SPV M1000,

Orange SPV M2000, Orange SPV M500, Orange SPV M2500, Orange SPV M600, Orange

SPV M5000, Orange SPV M30000, Orange SPV M3100, Orange SPV, Orange SPV E100,

Orange SPV E200, Orange SPV C500, Orange SPV C550, Orange SPV C600, Orange SPV

C700, Orange SPV C100, i-Mate Jam Black, i-Mate PDA2, i-Mate Jamin, i-Mate JasJar, i-

Mate K-JAM, i-Mate JasJam, i-Mate Smartphone, i-Mate SP2, i-Mate SP3, i-Mate SP3i, i-

Mate SP4m, i-Mate SP5, i-Mate SP5m, i-Mate Smartflip, T-Mobile MDA, T-Mobile MDA

II, T-Mobile MDA III, T-Mobile MDA Compact,  T-Mobile MDA Compact II, T-Mobile

MDA Compact III, T-Mobile MDA Pro, T-Mobile MDA Vario, T-Mobile MDA Vario II, T-

Mobile SDA, T-Mobile SDA II, T-Mobile SDA music, T-Mobile SDA music II, and T-

Mobile Dash cellular telephones based on the above listed HTC platforms, as well as any

other cellular telephones or devices acting or capable of acting under the GPRS standard or

in the manner described and claimed in the '406 patent.

16.    The infringement of the '406 patent alleged above has injured the Plaintiff and thus, it is

entitled to recover damages adequate to compensate for Samsung, LG, and HTC's

infringement, which in no event can be less than a reasonable royalty.

## PATENT INFRINGEMENT COUNT II

17.    On April 18, 2006, United States Patent No. 7,031,716 ("the '716 patent") entitled "Network

Communication System Using Assigned Timeslots For Nodes to Request A Bandwidth

Amount For Data Transmission With A Resulting Grant For The Node To Transmit" was

duly and legally issued. A true and correct copy of the '716 patent is attached as Exhibit B.

18.    Pursuant to 35 U.S.C. § 282, the above-listed United States Patent is presumed valid.

19.    Plaintiff, GPNE Corp., is the owner of the '716 patent.

20.    Samsung, on information and belief, manufactures, uses, and sells products that infringe at

       least Claim 34 of the '716 patent, including for example and without limitation Samsung's

       BlackJack, Trace, t509s, t619, SGH-c207, SGH-c225, SGH-d307, SGH-d357, SGH-d407,

       SGH-d415, SGH-d700, SGH-d807, SGH-e105, SGH-e315, SGH-e317, SGH-e715, SGH-

       p207, SGH-p705, SGH-p735, SGH-p777, SGH-q105, SGH-s105, SGH-s307, SGH-v205,

       SGH-v206, SGH-x105, SGH-x427, SGH-x427m, SGH-x475, SGH-x495, SGH-x497, SGH-

       z400, SGH-zx10, and SGH-zx20 cellular telephones, as well as any other cellular telephones

       or devices acting or capable of acting under the GPRS standard or in the manner described

       and claimed in the '716 patent.

21.    LG, on information and belief, manufactures, uses, and sells products that infringe at least

       Claim 34 of the '716 patent, including for example and without limitation LG's A7110,

       A7710, C1300, C1300i, C1500, C2000, CG225, CG300, CU320, CU400, CU500, F7200,

       F9100, F9200, G4011, G4015, G4050, L1150, L1200, L1400, and L1400i cellular

       telephones, as well as any other cellular telephones or devices acting or capable of acting

       under the GPRS standard or in the manner described and claimed in the '716 patent.

22.    HTC, on information and belief, manufactures, uses, and sells products that infringe at least

       Claim 34 of the '716 patent, including for example and without limitation HTC's Wallaby,

       Himalaya, Blue Angel, Magician, Magician Refresh, Alpine (Mont Blanc), Charmer,

6

Prophet, Universal, Wizard (Prodigy), Hermes, TyTN, Artemis, P3300, Trinity, P3600, Muse (Melody), Herald, P4350, Foreseer DVB-H TV, Monet (Trilogy) DVB-H TV, Canary, Tanager, Voyager, Typhoon, Typhoon Feeler, Typhoon Sonata, Typhoon Amadeus, Hurricane, Tornado (Riemma, Farada, Tempo), Blizzard, Star Trek, Breeze, Excalibur, Oxygen, and Vera cellular platforms, as well as the Cingular 2125, Cingular 3125, Cingular 8125, Cingular 8525, Qtek 1010, Qtek 2020, Qtek 9090, Qtek S100, Qtek S110, Qtek 2020i, Qtek S200, Qtek 9000, Qtek 9100, Qtek 9600, Qtek 6080, Qtek 7070, Qtek 8060, Qtek 8080, Qtek 8010, Qtek 8020, Qtek 8100, Qtek 8200, Qtek 8300, Qtek 8310, Qtek 8500, Qtek 8600, Dopod 686, Dopod 696, Dopod 700, Dopod 818, Dopod 828, Dopod 696i, Dopod 818 Pro, Dopod 900, Dopod 838, Dopod P800W, Dopod D810, Dopod C800, Dopod 515, Dopod 535, Dopod 565, Dopod 575, Dopod 585, Dopod 566, Dopod 586, Dopod 586W, Dopod 577W, Dopod s300, Dopod C720W, Dopod 310, i-Mate PocketPC, i-Mate PDA2K, i-Mate Jam,$O_2$ XDA,$O_2$ XDA, $O_2$ XDA II, $O_2$ XDA IIs, $O_2$ XDA II Mini, $O_2$ XD IIi,$O_2$ XDA Neo,$O_2$ XDA Exec,$O_2$ XDA Mini S,$O_2$ XDA Trion,$O_2$ XDA Orbit, Orange SPV M1000, Orange SPV M2000, Orange SPV M500, Orange SPV M2500, Orange SPV M600, Orange SPV M5000, Orange SPV M30000, Orange SPV M3100, Orange SPV, Orange SPV E100, Orange SPV E200, Orange SPV C500, Orange SPV C550, Orange SPV C600, Orange SPV C700, Orange SPV C100, i-Mate Jam Black, i-Mate PDA2, i-Mate Jamin, i-Mate JasJar, i-Mate K-JAM, i-Mate JasJam, i-Mate Smartphone, i-Mate SP2, i-Mate SP3, i-Mate SP3i, i-Mate SP4m, i-Mate SP5, i-Mate SP5m, i-Mate Smartflip, T-Mobile MDA, T-Mobile MDA II, T-Mobile MDA III, T-Mobile MDA Compact, T-Mobile MDA Compact II, T-Mobile MDA Compact III, T-Mobile MDA Pro, T-Mobile MDA Vario, T-Mobile MDA Vario II, T-

7

Mobile SDA, T-Mobile SDA II, T-Mobile SDA music, T-Mobile SDA music II, and T-Mobile Dash cellular telephones based on the above listed HTC platforms, as well as any other cellular telephones or devices acting or capable of acting under the GPRS standard or in the manner described and claimed in the '716 patent.

23.    The infringement of the '716 patent alleged above has injured the Plaintiff and thus, it is entitled to recover damages adequate to compensate for Samsung, LG, and HTC's infringement, which in no event can be less than a reasonable royalty.

## DEMAND FOR JURY TRIAL

24.    Plaintiff hereby demands a jury trial on all claims and issues.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for entry of judgment:

A.    that Defendants, Samsung, LG, and HTC, have infringed one or more claims of the '406 and '716 patent;

B.    that Defendants, Samsung, LG, and HTC, account for and pay to Plaintiff all damages caused by the infringement of the '406 and '716 patent, which by statute can be no less than a reasonable royalty;

C.    that Plaintiff be granted pre-judgment and post-judgment interest on the damages caused to them by reason of Defendants, Samsung, LG, and HTC's infringement of the '406 and '716 patent;

D.    that Plaintiff be granted its attorneys' fees in this action;

E.    that costs be awarded to Plaintiff;

8

F.      that Plaintiff be granted such other and further relief as the Court may deem just and

proper under the current circumstances.


Respectfully submitted,


Date: 01/31/07                          /s/ John Ward, Jr.
                                        T. John Ward, Jr.
                                        Texas Bar No. 00794818
                                        Law Office of T. John Ward, Jr., P.C.
                                        111 W. Tyler Street
                                        Longview, Texas 75601
                                        Telephone: (903) 757-6400
                                        Facsimile:   (903) 757-2323
                                        E-mail:      jw@jwfirm.com

                                        Edward W. Goldstein
                                        **LEAD ATTORNEY**
                                        Texas Bar No. 08099500
                                        E-mail: egoldstein@gfpiplaw.com
                                        Christopher M. Faucett
                                        Texas Bar No. 00795198
                                        E-mail: cfaucett@gfpiplaw.com
                                        Matt Prebeg
                                        Texas Bar No. 00791465
                                        E-mail: mprebeg@gfpiplaw.com
                                        Corby R. Vowell
                                        Texas Bar No. 24031621
                                        E-mail: cvowell@gfpiplaw.com
                                        GOLDSTEIN, FAUCETT & PREBEG L.L.P
                                        1177 West Loop South, Suite 400
                                        Houston, TX 77027
                                        Telephone: (713) 877-1515
                                        Facsimile:   (713) 877-1737

                                        *ATTORNEYS FOR PLAINTIFF*


F:\CLIENT\VJ763 GFNID003 GFNIN\Pleadings\Complaint - GFRS.doc

9

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC. and | § | |
| SCIENTIFIC ATLANTA, INC., ARRIS | § | |
| GROUP, INC., and THOMSON, INC. | § | |
| | § | |
| Plaintiffs | § | C. A. No. 07-671 (SLR) |
| v. | § | Jury Trial Demanded |
| | § | |
| GPNE CORP. | § | |
| Defendant. | § | |

## DECLARATION OF ERNEST BODNER

I, Ernest Bodner, declare as follows:

1. I am an attorney admitted to practice before the State of Hawaii. I am in-house counsel for Defendant GPNE Corp. If called as a witness I could competently testify to the following.

2. GPNE Corp. ("GPNE") is a Delaware Corporation with its principal place of business located at 2800 Woodlawn Drive, Suite 233, Honolulu, HI 96822.

3. On January 31, 2007, GPNE filed a patent infringement action on U.S. Pat. Nos. 6,282,406 and 7,03,716 in the Eastern District of Texas against Samsung Telecommunications America, LLC ("Samsung"), C.A. No. 6:07-cv-059-LED, for manufacturing, using, and/or selling GPRS capable cellular phones.

4. GPNE and Samsung have agreed to a scheduling order and a protective order which were entered by the court on June 8, 2007 and November 15, 2007, respectively. GPNE has filed their infringement contentions and Samsung has filed their invalidity contentions. GPNE and Samsung have submitted their terms and claim elements for

construction and the court has scheduled a *Markman* hearing for August 7, 2008. The trial date is scheduled for March 9, 2009.

5.   On January 31, 2007, GPNE filed a patent infringement action on U.S. Pat. No. 6,282,406 in the Eastern District of Texas against Time Warner Inc., Comcast Cable Communications, LLC, and Charter Communications, Inc. ("Texas DOCSIS Defendants"), C.A. No. 6:07-cv-060-LED, for manufacturing, using, or selling DOCSIS certified cable modems.

6.   On June 13, 2007, GPNE met to discuss settlement with the Texas DOCSIS Defendants under Federal Rule of Evidence 408. ██ ███████████████████

███████████████████████████████████████

██ ██████████████████████████████

█████████████████████████████████

██████████   On November 5, 2007 a Joint Stipulation to Dismiss was filed and subsequently entered by the court.

7.   GPNE's documents related to this litigation are located in the offices of Goldstein, Faucett, and Prebeg, in Houston Texas.

8.   GPNE does not have any documents or anticipated witnesses located in Delaware.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 17 day of January, 2008 in Honolulu, Hawaii.

By:    Ernest Bodner

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

TIME WARNER CABLE, INC.,             :
                                     :
                    Plaintiff,       :
                                     :
        v.                           :    Civil Action No. 07-67-MPT
                                     :
GPNE CORP.,                          :
                                     :
                    Defendant.       :
                                     :

## MEMORANDUM OPINION

### I.    Introduction

United States Patent No. 6,282,406 ("the '406 patent"), entitled "Paging Method

and Apparatus," is owned by GPNE Corp. ("GPNE"). On February 2, 2007, Time

Warner Cable, Inc. ("TWC") filed suit in Delaware seeking a declaration that the '406

patent is invalid, that TWC has not infringed upon the '406 patent, and to issue an

injunction against GPNE from charging infringement or instituting any legal action for

infringement of the '406 patent.[1]  Presently under consideration is GPNE's motion to

dismiss, stay, or transfer this case to the Eastern District of Texas.[2]

### II.    Procedural History

On January 31, 2007, GPNE filed a patent infringement case ("the Texas

litigation") in the Eastern District of Texas against Time Warner, Inc. ("TWI"), Comcast

Cable Communications LLC ("Comcast"), and Charter Communications, Inc. ("Charter")

---

[1] D.I. 1 at 1.

[2] D.I. 7.

alleging infringement of the '406 patent.[3] The Texas litigation did not originally include

TWC as a defendant, but instead listed TWI.[4] Two days later, on February 2, 2007,

TWC filed the present action in this court for a declaratory judgment of noninfringement

and invalidity of the '406 patent.[5] In the Delaware complaint, TWC alleges that GPNE

intends to include it as a defendant in the Texas litigation and in so doing would impact

its business activities.[6] TWC maintains that it was not originally a defendant in the

Texas litigation because TWI and TWC are separate entities.[7]

On February 26, 2007, GPNE amended its complaint in the Texas litigation to

add TWC as a defendant.[8] That same day, GPNE filed a motion to dismiss, stay, or

transfer the Delaware case to the Eastern District of Texas, because the Texas case

was the first action that involved the '406 patent.[9] Accordingly, GPNE notes that since

the Texas litigation is moving forward against all three defendants, this court should

dismiss, stay, or transfer the matter to Texas in the interests of justice and judicial

economy.[10]

Jurisdiction is proper in both the Eastern District of Texas and Delaware. The

Eastern District of Texas has personal jurisdiction over the defendants, including TWC,

as each defendant in the Texas litigation operates a high speed internet system in that

jurisdiction, which is the basis of the alleged infringement.[11] Delaware has personal

---

[3] D.I. 1 at 2 (Texas litigation Case No.: 6:07-cv-60-LED (E.D. Tex.)).
[4] Id.
[5] Id. at 1.
[6] Id. at 2.
[7] Id.
[8] D.I. 8, Ex. B (substituting TWC as defendant in place of TWI).
[9] D.I. 7.
[10] D.I. 24 at 2-3.
[11] Id. at 3.

2

jurisdiction to hear this matter, as all parties involved are incorporated in Delaware. All parties in both matters are large national corporations and none have their principal place of business in Texas or Delaware.[12]

## III.   Positions of the Parties

### Motion to Dismiss or Stay

In the motion under consideration, GPNE asserts that the first-to-file rule is applicable, which favors its first-filed action in Texas. GPNE maintains that the Delaware case should be dismissed or stayed in the interest of national uniformity in patent matters.[13] Because this matter is presently before two different federal courts of equal standing, GPNE contends that consolidation serves the interest of justice.[14] According to GPNE, the first-to-file rule hinges upon which court first obtains possession of the subject of the dispute, and not whether all parties have been identified or added to a case.[15] Furthermore, GPNE argues that even if the parties are not identical, dismissal is warranted if the cases substantially overlap on substantive issues.[16] Thus, GPNE argues that since the Texas litigation was filed two days before

---

[12] D.I. 8, Ex. B at 1-2; see also D.I. 24 at 4 ("While it is true that each party was incorporated in Delaware, Time Warner Cable's headquarters are in Stamford, Connecticut, Comcast's headquarters are in Philadelphia, Pennsylvania, Charter's headquarters are in St. Louis, Missouri, and GPNE's headquarters are in Honolulu, Hawaii.") (citation omitted).

[13] Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993) (First-to-file rule "raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits.").

[14] Cashedge, Inc. v. Yodlee, Inc., 2006 U.S. Dist. LEXIS 50488, at *7-*8 (D. Del. July 19, 2006) (quoting Brunswick Corp. v. Precor Inc., 2000 U.S. Dist. LEXIS 22222, at *8 (D. Del. Dec. 12, 2000) ("Where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'")).

[15] Schering Corp. v. Amgen Inc., 969 F. Supp. 258, 267 (D. Del. 1997) ("The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute.") (citations omitted).

[16] D.I. 8 at 3.

3

the Delaware declaratory action, the Texas matter takes precedence.[17]

TWC also contends that the first-to-file rule is applicable; however, since the Delaware action was filed before TWC was added to the Texas suit, the Delaware District Court should decide the matter between the two companies.[18] TWC claims that since it was not a party to the Texas litigation on February 2, 2007, it was the first-to-file.[19] TWC maintains that Delaware does not follow the substantial overlap test and prevents duplicative litigation only where the *same* issues arise between the *same* parties.[20] TWC asserts that "TWI is a completely different company," which is separately traded on the New York Stock Exchange.[21] Both parties acknowledge that TWI is an 84% owner of TWC and the remainder of the company is owned by Adelphia Communications Corp.[22] Thus, TWC reiterates that because it was not a party to the Texas litigation, the instant action was the first-filed complaint between TWC and GPNE and, therefore, should be tried in Delaware.

TWC further argues that because forum shopping was GPNE's sole motivation for choosing to litigate in Texas, its preference for that district should be ignored. TWC alleges that "GPNE chose the Eastern District of Texas simply because it is regarded as favorable by plaintiffs in patent cases."[23] TWC notes that all parties to the litigation, including GPNE, are Delaware corporations and only forum shopping explains why the

---

[17] *Id.* at 3-4.

[18] D.I. 14 at 4-7.

[19] *Id.* at 5.

[20] *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002) (stating first-to-file rule in Delaware requires identical parties and does not follow substantial overlap test).

[21] D.I. 14 at 4; *id.* at 5 ("None of the senior executive officers of TWC responsible for the management of TWC's business operation are officers or directors of TWI, and none of the directors of TWC are directors of TWI.") (citations omitted); D.I. 15 at 1 (Block Declaration).

[22] D.I. 8 at 1; *see also* D.I. 15 at 1-2 (distinguishing TWI and TWC as separate entities).

[23] D.I. 14 at 8.

4

lawsuit was filed anywhere other than Delaware.[24]  Finally, TWC argues that there are

"sound reasons," such as, the location of the parties, witnesses, and documents, that

dictate that the matter should be tried in Delaware.[25]

**Motion to Transfer**

GPNE argues that this action should be transferred to Texas in the interest of

judicial economy and justice since the Texas litigation involving similar issues and

parties is currently proceeding.[26]  GPNE states that because TWC is now a party to the

Texas litigation, it would be economically wasteful to duplicate litigation in this court.[27]

GPNE maintains that since judicial effort and resources are being expended in the

Texas litigation, "suits involving like defendants who practice similar technology and are

accused of infringing the same patent should also proceed in the Eastern District [of

Texas]."[28]

TWC counters by arguing that GPNE, as the moving party, has failed to carry the

heavy burden of showing that the balance of convenience of the parties and witnesses

favors a transfer to Texas.[29]  TWC claims that Delaware is a rational and legitimate

forum since both companies are incorporated in this state.[30]  GPNE does not offer any

advantages over pursuing this litigation in Texas, rather than in Delaware.  TWC

maintains that Delaware is the "most natural and convenient forum," and, as the plaintiff

---

[24] *Id.*

[25] *Id.*

[26] D.I. 24 at 2; *see also* 28 U.S.C.A. § 1404(a) ("For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

[27] D.I. 8 at 6.

[28] D.I. 24 at 2-3.

[29] D.I. 14 at 12.

[30] *Id.* at 14.

5

in this case, its choice of forum should be respected and the motion to transfer should be denied.[31]

## IV.    Analysis

### Motion to Dismiss Under the First-to-File Rule

GPNE contends that TWC's declaratory judgment action in this court should be dismissed because this case involves infringement of the same patent, the '406 patent, and concerns the same services and products first-filed in the Texas litigation.[32] The court finds that the present matter should be dismissed in accordance with the first-to-file rule to prevent duplicative lawsuits by different federal courts.

The first-to-file rule gives courts the power to dismiss subsequent claims involving the same parties and the same issues already before another court.[33] The first-to-file rule reduces the possibility of dispositive differences between the jurisdictions and ensures that litigants receive a single determination of their controversy, rather than multiple decisions which may conflict and require separate appeals.[34] Additionally, the rule "helps to avoid the waste involved in duplicative suits, and the delay in providing prompt administrative justice."[35] While the decision is left to the court's discretion, the first-to-file rule "has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of 'similar cases . . . in different

---

[31] *Id.* at 15.

[32] D.I. 7.

[33] *See E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988).

[34] *See Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *see also Corixa Corp. v. IDEC Pharm. Corp.*, 2002 U.S. Dist. LEXIS 2980, at *7 (D. Del. Feb. 25, 2002) ("[H]aving two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank.").

[35] *Advanta Corp. v. Visa U.S.A., Inc.*, 1997 WL 88906, at * 2 (E.D. Pa. Feb. 19, 1997) (citing *Fischer & Porter Co. v. Moorco International Inc.*, 869 F. Supp. 325, 325 (E.D. Pa. 1994)).

6

federal district courts.'"[36]

GPNE's patent infringement case in the Texas litigation was filed on January 31,

2007, two days before TWC filed in this court. Chronologically, GPNE was the first-to-

file.[37]  TWC was later added as a defendant to the Texas litigation on February 26,

2007. TWC argues that since it was not a defendant in the Texas litigation, it was the

first-to-file with the "same" parties and the "same" issues as required by the Third

Circuit.[38]  Citing *APV N. Am.*, TWC asserts that because the Third Circuit has

"expressly rejected" the substantial overlap test, the first-to-file rule requires the parties

to be identical in both actions for the first-to-file rule to apply.[39]  However, in *APV N.*

*Am.*, where parties in two concurrent suits were not identical, the inquiry hinged on

whether the issues in the two cases concerned the "same set of facts," not whether

there was substantial overlap between the issues.[40]  There, because the two cases

implicated different patents, involved different technologies, and, "thus, different facts,"

the court did not adhere to the first-to-file rule and, accordingly, denied the motion to

---

[36] *E.E.O.C.*, 850 F.2d at 971 (omission in original) (citations omitted); *see also West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985) ("The federal courts have long recognized that . . . comity requires federal district courts . . . to exercise care to avoid interference with each other's affairs.").

[37] *See Genentech*, 998 F.2d at 938 (quoting *Crosley Corp. v. Westinghouse Elec. Mfg. Co.*, 130 F.2d 474, 475 (3d Cir. 1942) ("[T]he rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by '[reasons] just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.'") (alteration in original)).

[38] *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002) (finding first-to-file criteria demands same identity and same issues as earlier controversy).

[39] *Id.* at 397 ("[T]he Court has been unable to locate any case law suggesting that . . . [the substantial overlap inquiry] is the test to be used in this Circuit."); *compare Save Power Ltd. v. Synteck Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (Applying the substantial overlap test, the Fifth Circuit held that "[r]egardless of whether or not . . . [suits] are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues.") (citations omitted).

[40] 295 F. Supp. 2d at 397 (citations omitted).

7

dismiss.[41] In contrast to the facts of the *APV N. Am.* case, the issues in the current

matter concern the same facts, as well as the same patent, as the Texas litigation.[42]

Third Circuit precedent is also inconsistent with TWC's interpretation of the first-

to-file rule, which does not specifically require the exact identity of the parties.

Historically, the Third Circuit has applied the first-to-file rule for cases involving the

same issues.[43] In *E.E.O.C. v. University of Pennsylvania*, the court held that "in all

cases of federal concurrent jurisdiction, the court which first has possession of the

*subject* must decide it."[44] In *Schering Corp. v. Amgen Inc.*, the District of Delaware

interpreted the first-to-file rule as turning "on which court first obtains possession of the

subject of the dispute, not the parties of the dispute."[45] Also, the first-to-file rule "serves

to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all

disputes from *common matters*."[46] Furthermore, no relation back analysis, Fed. R. Civ.

P. 15, is necessary because GPNE's lawsuit in Texas was the first-filed suit concerning

the '406 patent.[47] Since the two cases both involve the same facts and the same

---

[41] *See id.*

[42] TWC's declaratory judgment action of invalidity concerns the exact same issue, albeit in reverse, as the Texas litigation. *See,* e.g., D.I. 14 at 7 (asserting issues are dissimilar because "TWC's complaint in this action contains the first (and currently the only) allegation that the '406 patent is invalid."); Case No.: 6:07-cv-60-LED (E.D. Tex.), D.I. 17 at 3 (filing subsequent patent invalidity defense in Texas case).

[43] *See E.E.O.C.,* 850 F.2d at 971 (In 1941, "this court adopted what has become known as the first-filed rule. We concluded that 'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'") (citations omitted).

[44] *Id.* (citations omitted) (emphasis added).

[45] 969 F. Supp. 258, 267 (D. Del. 1997) (quoting *Advanta Corp. v. Visa U.S.A., Inc.,* 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997) ("Advanta cannot avoid application of the first-filed rule simply by asserting that it was not initially a party to the earlier filed action.")).

[46] *Corixa Corp. v. IDEC Pharm. Corp.,* 2002 U.S. Dist. LEXIS 2980, at *4 (D. Del. Feb. 25, 2002) (litigating two separate trials in mirror image defeats first-to-file rule where cases involve same patents) (emphasis added).

[47] *See Schering,* 969 F. Supp. at 267 (holding that a relation back analysis is "misdirected" since an "action is considered first-filed, regardless of the addition of a new party"); *see also supra* text accompanying notes 33-36, for a discussion of the first-to-file rule's focus on the subject of the

8

patent, trying the matter in two different courts would defeat the reasoning behind the

first-to-file rule. Therefore, because the Eastern District of Texas initially had

jurisdiction over the subject of the Delaware matter, GPNE's choice of forum should be

shown deference and the Delaware case should be dismissed.

## Forum Shopping

GPNE's filing of the action in Texas does not appear to be forum shopping or

made in bad faith. GPNE asserts that Texas is a "centrally located forum" and is

appropriate for the "convenience of the parties and because all three defendants

conduct business in different states, have their headquarters in different states, and

would be required to travel regardless."[48] A plaintiff's choice of forum should be upheld

unless there are rare or extraordinary circumstances that would mandate dismissal or

transfer.[49] Forum shopping is considered a proper basis for departing from the first-to-

file rule.[50] While the District of Delaware would also undoubtedly be an appropriate

jurisdiction, the mere fact that all the parties in the Texas litigation are incorporated in

---

controversy, not the individual identity of the parties.

    Although the court does not believe that a relation back analysis is necessary, if it were required, the Texas litigation would continue to be the first-filed case. The date of GPNE's original complaint is the controlling date for the first-to-file rule as GPNE's amended complaint, adding TWC as a defendant, relates back to the original complaint. While GPNE does not make this argument, Federal Rule 15(c)(3) allows for amended pleadings to date back to the original complaint. *See generally National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, 1997 U.S. Dist. LEXIS 16734, at *16-*17 (E.D. Pa. Oct. 29, 1997) ("[W]hile a literal reading of Rule 15(c)(3) might suggest that the mistake element only applies to misnamed or misdescribed parties, 'the Rule is widely-understood to allow the addition of new parties that were never originally named or described.'") (citations omitted). Regardless, TWC likely knew of the Texas action and the potential to be added as a defendant. Therefore, using a relation back analysis, the Texas litigation remains the first-filed action.

    [48] D.I. 24 at 4.

    [49] *See E.E.O.C.*, 850 F.2d at 976.

    [50] *Id.*

9

Delaware, "alone will not tip the 'balance of convenience' in its favor."[51] No evidence has been presented that GPNE chose to litigate in Texas in bad faith.[52] Thus, without evidence of forum shopping, the first-to-file rule mandates respect for GPNE's choice of forum.

TWC's decision to file suit in Delaware after GPNE's suit against TWI could, however, be considered an example of forum shopping. Even if this case was considered the first-filed, the declaratory judgment action appears to be in anticipation of TWC being added as a defendant in Texas. TWC, itself, makes such assertions in its complaint: "TWC reasonably believes that GPNE is intending to impact the business activities of TWC . . . ."[53] Courts have rejected the first-to-file rule "when the first-filing party instituted suit in one forum in anticipation of imminent judicial proceedings by opposing party's imminent suit in another, less favorable, forum."[54] Since TWI is an 84% owner of TWC, TWC was likely aware of the Texas litigation and the potential to become a defendant in that lawsuit. Therefore, had the instant case been considered the first-filed action, there could potentially be grounds for dismissal or transfer based on forum shopping.

In light of the court's determination that this matter should be dismissed, GPNE's

---

[51] *Corixa Corp. v. IDEC Pharm. Corp.*, 2002 U.S. Dist. LEXIS 2980, at *12 (D. Del. Feb. 25, 2002) (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 207 (D. Del. 1998)).

[52] *See generally* D.I. 14 at 8 (arguing that Texas' plaintiff friendly status was GPNE's sole reason for choice of forum); *see also supra* text accompanying note 50 (explaining GPNE's reasons for choosing Texas forum).

[53] D.I. 1 at 2.

[54] *E.E.O.C.*, 850 F.2d at 976; *see, e.g., Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (first-filing not controlling when it was made "in apparent anticipation of imminent judicial proceedings" by opposing party); *Thomas & Betts Corp., v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002) ("Courts have been . . . willing to reject the first-to-file rule and dismiss a declaratory judgment action, if that action was filed for the purpose of anticipating a trial of the same issue in a court of coordinate jurisdiction.") (citations omitted).

request to stay or transfer is denied as moot.

**V.     Conclusion**

For the reasons stated above:

It is ORDERED AND ADJUDGED that GPNE's motion to dismiss, stay, or

transfer TWC's complaint (D.I. 7.), is granted in part and denied in part.

1. GPNE's motion to dismiss TWC's complaint is **GRANTED**.

2. GPNE's motion to stay or transfer this matter is **DENIED** as moot.

United States Magistrate Judge

11

# EXHIBIT E



SEARCH FLIGHTS → CHOOSE FLIGHTS → TICKET DETAILS → TRAVELER INFORMATION →
COMPLETE PURCHASE  →  CONFIRMATION

# Select Departing Flight

Fares listed are for the entire trip per person and do not include all <u>taxes and fees</u>.
The fare displayed is the lowest available for the dates requested; however some flights may not be in the cabin you requested.

**Your Search by Price:**

**One Way**
Depart: **Honolulu, HI (HNL)**   Date:  **Fri., Jan. 18, 2008**   Time: **Anytime**   Cabin: **Economy**
Arrive:  **Houston, TX (IAH - Intercontinental)**

> Start New Search

**$ OUR LOWEST FARES**

| Nonstop | First/BusinessFirst |
|---|---|
| from | Cabin |
| **$759.93** | from |
| | **$1,295.92** |

**FLY THROUGH CHECKOUT IN 3 EASY STEPS.**
1. Choose Bill Me Later* at checkout.   See details at checkout.
2. Answer two questions.
3. Get a statement in the mail.
*subject to credit approval
**BillMe Later**

**Select Your Departing Flight for Fri., Jan. 18, 2008:**

| Price | Departing | Arriving | Travel Time | OnePass Miles | |
|---|---|---|---|---|---|
| **LOWEST FARE** From **$759.93** | Depart: **8:00 p.m.** **Fri., Jan. 18, 2008** Honolulu, HI (HNL) | Arrive: **7:30 a.m.** +1 Day **Sat., Jan. 19, 2008** Houston, TX (IAH - Intercontinental) | Travel Time: **7 hr 30 mn** | OnePass Miles/ Elite Qualification: **3,917 /150%** | Flight: **CO2** Aircraft: **Boeing 767** Fare Class: **Economy (H)** Meal: **Dinner** View Seats |
| **LOWEST FARE** From **$759.93** | Depart: **10:25 p.m.** **Fri., Jan. 18, 2008** Honolulu, HI (HNL) | Arrive: **9:55 a.m.** +1 Day **Sat., Jan. 19, 2008** Houston, TX (IAH - Intercontinental) | Travel Time: **7 hr 30 mn** | OnePass Miles/ Elite Qualification: **3,917 /150%** | Flight: **CO72** Aircraft: **Boeing 767** Fare Class: **Economy (H)** Meal: **Dinner** View Seats |

**Nonstop flights from $759.93**

**Start New Search:**

| From: | Depart Date: | Time: | Passenger Total: | Search By: | |
|---|---|---|---|---|---|
| Honolulu, HI (HNL) | 1/18/2008 | Anytime | 1 | | ☑ Nonstop |
| To: | | | | | |
| Houston, TX (IAH - | | | | | |

☐ Search Nearby Airports   ☐ Search for Lower Fares +/- 3 Days

Change Passengers
Cabin:
◉ Economy

○ First/BusinessFirst

◉ Price

○ Schedule

Flights Only

> Advanced Search



*OnePass frequent flyer mileage information is provided as a convenience to OnePass members. Elite miles is the percentage of OnePass miles earned towards Elite status when booked on continental.com. Actual flown miles will be posted to your account. Fare class, Elite and other promotional bonuses are not included in the totals listed. A minimum of 500 OnePass miles is earned for flights less than 500 miles in distance. For Amtrak train segments 250 OnePass miles is awarded for Economy Class and 325 OnePass miles for First Class.

Note: On-time performance information can also be ascertained by calling 1-800-231-0856. Outside the U.S. and Canada contact one of our worldwide reservations offices.

**PRIVACY**
**BBBOnLine**

Business Services | Cargo | Careers
Contract of Carriage | Customer First | Legal Information | Privacy Policy | Site Map | Travel Agents
Copyright © 2008 Continental Airlines, Inc.
All rights reserved.



**AmericanAirlines®** AA.com®

Home | Login | My Account | Worldwide Sites | Contact AA | FAQ    Search...

## Book Flights

**Reservations**

**Travel Information**

**Net SAAver & Special Offers**SM

**AAdvantage®**

**Products & Gifts**

**Business Programs & Agency Reference**

**About Us**

Deal Finder™
Get Details ▸▸

Select Flights     Passenger Details     Flight Summary     Payment     Ticketing Options     Finish

**One-Way Flight Search by Schedule**          **Modify Search**          ?

PRINT VERSION

**Your Request:**
Fri, Jan 18  12:00 PM    HNL - Honolulu/Oahu International
                          DFW - Dallas/Fort Worth International

Service Preference: Economy

- Choose your Departing flight(s)
- Click Continue

Fares are not guaranteed until tickets are purchased.

From: City or Airport Code
HNL
and airports within  0 Miles

To: City or Airport Code
DFW
and airports within  0 Miles

Departure Date: ▦ | Jan   | 18   | All Day

Number of Flights to Display: 10

Number of Stops: None

MORE OPTIONS

### Departing

| Select | Carrier | Flight # | Departing City | Date & Time | Arriving City | Date & Time | Aircraft Type | Cabin | Flight Miles | Meals | Travel Time |
|--------|---------|----------|----------------|-------------|---------------|-------------|---------------|-------|--------------|-------|-------------|
| ○ | AMERICAN AIRLINES | 8 | HNL Honolulu/ Oahu | Jan 18, 2008 06:50 PM | DFW Dallas/ Fort Worth | Jan 19, 2008 06:05 AM | 763 | Economy View Seats | 3784 |  | 7 hr 15 min |
| | **Alert:** Overnight flight or connection. | | | | | | | | | | |
| ○ | AMERICAN AIRLINES | 102 | HNL Honolulu/ Oahu | Jan 18, 2008 08:40 PM | DFW Dallas/ Fort Worth | Jan 19, 2008 08:00 AM | 763 | Economy View Seats | 3784 |  | 7 hr 20 min |
| | **Alert:** Overnight flight or connection. | | | | | | | | | | |

Top of Page

START OVER

DealFinder™ | RSS | AA.com en Español

Airline Tickets | AA Careers | Copyright | Legal | PRIVACY POLICY | Customer Service Plan | Browser Compatibility | Site Map

Admirals Club   American *flight*   AA VACATIONS American Airlines

# EXHIBIT F

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **DELAWARE** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,077 | 1,190 | 1,797 | 1,362 | 2,028 | 1,004 | U.S. | Circuit |
| | Terminations | | 1,419 | 1,448 | 1,516 | 1,507 | 1,478 | 1,020 | | |
| | Pending | | 1,501 | 1,853 | 2,085 | 1,836 | 1,999 | 1,477 | | |
| | % Change in Total Filings | Over Last Year | | -9.5 | | | | | 74 | 6 |
| | | Over Earlier Years | | | -40.1 | -20.9 | -46.9 | 7.3 | 34 | 3 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | 1.9 | 3.1 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 270 | 298 | 449 | 340 | 507 | 251 | 82 | 5 |
| | | Civil | 233 | 264 | 414 | 306 | 462 | 233 | 73 | 5 |
| | | Criminal Felony | 30 | 28 | 29 | 25 | 38 | 18 | 88 | 5 |
| | | Supervised Release Hearings** | 7 | 6 | 6 | 9 | 7 | - | 87 | 4 |
| | Pending Cases | | 375 | 463 | 521 | 459 | 500 | 369 | 48 | 5 |
| | Weighted Filings** | | 367 | 422 | 534 | 424 | 516 | 379 | 71 | 4 |
| | Terminations | | 355 | 362 | 379 | 377 | 370 | 255 | 69 | 4 |
| | Trials Completed | | 15 | 20 | 19 | 23 | 18 | 16 | 65 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.3 | 9.4 | 9.1 | 8.3 | 9.8 | 8.0 | 56 | 2 |
| | | Civil** | 16.8 | 10.9 | 14.0 | 11.2 | 8.2 | 12.6 | 91 | 5 |
| | From Filing to Trial** (Civil Only) | | 26.0 | 23.5 | 26.0 | 24.0 | 22.5 | 21.0 | 49 | 3 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 142 | 156 | 65 | 66 | 99 | 77 | | |
| | | Percentage | 10.6 | 9.1 | 3.4 | 3.9 | 5.4 | 5.5 | 76 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.2 | 1.3 | 1.1 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 39.60 | 39.82 | 38.50 | 34.98 | 33.84 | 32.68 | | |
| | | Percent Not Selected or Challenged | 24.1 | 22.8 | 20.9 | 24.0 | 24.4 | 19.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 930 | 32 | 6 | 233 | 12 | 6 | 20 | 76 | 52 | 160 | 132 | 51 | 150 |
| Criminal* | 117 | - | 26 | 14 | 29 | 20 | - | 2 | 5 | 10 | 2 | - | 9 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# EXHIBIT G

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

|  |  |  | \multicolumn{6}{c}{12-MONTH PERIOD ENDING SEPTEMBER 30} | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| \multicolumn{3}{l}{**TEXAS EASTERN**} | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | \multicolumn{2}{c}{Filings*} | 3,658 | 3,583 | 3,860 | 4,072 | 3,610 | 3,452 | U.S. | Circuit |
| | \multicolumn{2}{c}{Terminations} | 3,623 | 3,538 | 4,243 | 3,487 | 4,458 | 4,819 | | |
| | \multicolumn{2}{c}{Pending} | 3,079 | 3,035 | 2,983 | 3,358 | 2,825 | 3,706 | | |
| | % Change in Total Filings | Over Last Year | | 2.1 | | | | | 14 | 2 |
| | | Over Earlier Years | | | -5.2 | -10.2 | 1.3 | 6.0 | 41 | 5 |
| | \multicolumn{2}{l}{Number of Judgeships} | 8 | 8 | 8 | 8 | 7 | 7 | | |
| | \multicolumn{2}{l}{Vacant Judgeship Months**} | .0 | .0 | 9.1 | 4.2 | 19.3 | 10.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 457 | 448 | 483 | 509 | 515 | 493 | 38 | 6 |
| | | Civil | 375 | 376 | 411 | 431 | 444 | 427 | 27 | 5 |
| | | Criminal Felony | 82 | 72 | 71 | 77 | 70 | 66 | 36 | 3 |
| | | Supervised Release Hearings** | 0 | 0 | 1 | 1 | 1 | - | - | - |
| | \multicolumn{2}{l}{Pending Cases} | 385 | 379 | 373 | 420 | 404 | 529 | 45 | 6 |
| | \multicolumn{2}{l}{Weighted Filings**} | 550 | 511 | 518 | 529 | 492 | 492 | 13 | 3 |
| | \multicolumn{2}{l}{Terminations} | 453 | 442 | 530 | 436 | 637 | 688 | 45 | 7 |
| | \multicolumn{2}{l}{Trials Completed} | 21 | 21 | 21 | 26 | 22 | 22 | 39 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.2 | 8.3 | 8.4 | 7.5 | 8.9 | 8.0 | 52 | 7 |
| | | Civil** | 9.0 | 10.3 | 6.5 | 10.9 | 15.0 | 30.9 | 39 | 5 |
| | \multicolumn{2}{l}{From Filing to Trial** (Civil Only)} | 17.7 | 15.9 | 15.4 | 17.0 | 14.0 | 15.9 | 12 | 2 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 80 | 64 | 47 | 41 | 58 | 881 | | |
| | | Percentage | 3.2 | 2.6 | 1.9 | 1.4 | 2.4 | 26.1 | 18 | 2 |
| | \multicolumn{2}{l}{Average Number of Felony Defendants Filed Per Case} | 1.6 | 1.7 | 1.7 | 1.7 | 1.4 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 36.89 | 34.27 | 33.92 | 32.49 | 32.40 | 32.25 | | |
| | | Percent Not Selected or Challenged | 30.1 | 30.2 | 32.5 | 33.5 | 33.3 | 35.6 | | |

## 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 3001 | 156 | 318 | 1276 | 27 | 27 | 94 | 282 | 217 | 253 | 227 | 2 | 122 |
| Criminal* | 650 | 10 | 188 | 79 | 195 | 66 | 14 | 22 | 16 | 24 | 12 | 11 | 13 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."